[S.F. No. 23201. In Bank. Aug. 4, 1975.]

ROBERT D. STRATMORE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

William K. Coblentz and Jacobs, Sills & Coblentz for Petitioner.

Herbert M. Rosenthal and Arthur L. Margolis for Respondent.

**OPINION**

**THE COURT.**—Robert D. Stratmore, admitted to practice in 1972, was ordered to show cause why our order admitting him to practice should not be revoked for the commission of acts involving moral turpitude before his admission to practice. It was charged in particular, inter alia, that in 1971 he knowingly made false representations regarding his expenses to 11 New York law firms with the intent to deceive the

firms and thereby obtained money to which he was not entitled. Following evidentiary hearings both the local committee and Board of Governors of the State Bar (hereafter called the board) determined that the evidence sustained the foregoing charge. The local committee recommended that Stratmore be suspended from practice for six months and placed on probation for an additional eighteen months. The board recommended that he be suspended from practice for two years but that we stay execution of our order and place him on probation for that period on certain conditions (including nine months actual suspension) and order him to comply with rule 955, California Rules of Court, or that we revoke his license to practice if we lack authority to suspend him.

Business and Professions Code section 6100 provides that we may suspend or disbar an attorney for specified causes "arising after his admission to practice." However, section 6087 of that code provides: "Nothing in [the State Bar Act (Bus. & Prof. Code, §§ 6000-6172)] shall be construed as limiting or altering the powers of the Supreme Court of this State to disbar or discipline members of the bar as this power existed prior to the enactment of [the State Bar Act]."

■ Our inherent power over the admission, disbarment, and suspension of attorneys has long been recognized. (See, e.g., *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 225, 230 [113 Cal.Rptr. 175, 520 P.2d 991]; *In re Hallinan* (1954) 43 Cal.2d 243, 253-254 [272 P.2d 768]; *The People* v. *Turner* (1850) 1 Cal. 143, 150.) With respect to admission to practice, it has been stated that "The legislative standards are but *minimum* standards which must be applied; this court retains inherent power to require additional standards if it is not satisfied that the legislative qualifications are sufficient (*In re Lavine* (1935) 2 Cal.2d 324, 328 [41 P.2d 161])." (*Emslie* v. *State Bar, supra,* 11 Cal.3d at p. 225; see also 144 A.L.R. 150, 151.)

■ Similarly the statutory grounds for discipline are not exclusive. (See, e.g., *Fish* v. *The State Bar* (1931) 214 Cal. 215, 223 [4 P.2d 937]; *Howe* v. *The State Bar* (1931) 212 Cal. 222, 230 [298 P. 25]; *In re Bailey* (1926) 30 Ariz. 407 [248 P. 29, 31] [cert. dism. for failure to comply with rules, 275 U.S. 575 (72 L.Ed. 434, 48 S.Ct. 31)]; *Gould* v. *State* (1930) 99 Fla. 662 [127 So. 309, 312, 69 A.L.R. 699]; *Thomas* v. *State* (1953) 87 Ga.App. 765 [75 S.E.2d 193, 196]; *In re Ratner* (1965) 194 Kan. 362 [399 P.2d 865, 867]; *In re McBride* (1956) 164 Ohio St. 419 [58 Ohio Ops. 242, 132 N.E.2d 113, 116]; A.B.A. Problems and Recommendations on Disciplinary Enforcement (1970 Final Draft) Section II, The Inherent

Power of the Court to Supervise the Disciplinary Process, pp. 13-17.) *Fish* and *Howe,* for example, held that an attorney may be disciplined for violating the Rules of Professional Conduct although his conduct did not come within the terms of a statute authorizing discipline, and *Bailey* stated, "[T]he court will disbar an attorney for any reason and in any manner prescribed by the Legislature. But a statute cannot limit the inherent power of the court which admitted him to also disbar him for any additional reason which may satisfy the court he is no longer fit to be one of its officers." (*Bailey* at p. 31.)

Several early cases concluded that the courts lack authority to disbar or suspend an attorney on any ground other than those enumerated by statute. (*In re Collins* (1905) 147 Cal. 8, 13 [81 P. 220]; see *In re McCowan* (1917) 177 Cal. 93, 104 [170 P. 1100]; *In re Morganstern* (1923) 61 Cal.App. 702, 707 [215 P. 721].) The cited cases, however, were impliedly overruled or disapproved in *Fish* v. *The State Bar, supra,* 214 Cal. 215, 223 and *Howe* v. *The State Bar, supra,* 212 Cal. 222, 230 and are inconsistent with the above cited cases recognizing our inherent power to require standards with respect to admission to practice in addition to those imposed by the Legislature (*In re Lavine* (1935) 2 Cal.2d 324, 328 [41 P.2d 161, 42 P.2d 311]; see *Emslie* v. *State Bar, supra,* 11 Cal.3d 210, 225). After *Fish, Howe* and *Lavine,* this court in *Sullivan* v. *State Bar* (1946) 28 Cal.2d 488, 495, 496 [170 P.2d 888] made statements which are in accord with cases such as *Collins. Sullivan,* however, did not cite any cases to support the statements, nor did *Sullivan* mention our inherent power over discipline. Insofar as *Sullivan* is inconsistent with the views expressed herein it is disapproved.

■ Stratmore's manifest unfitness to practice was demonstrated by the proof that he obtained money from the New York law firms by fraudulent means for the purpose of personal gain. (See *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 471-472 [55 Cal.Rptr. 228, 421 P.2d 76].) ■ Since under our inherent power we may discipline an attorney for conduct "either in or out of [his] profession" which shows him to be unfit to practice (*The People* v. *Turner, supra,* 1 Cal. 143, 150), it is irrelevant that Stratmore's misconduct preceded his admission to practice. (See *In re Bogart* (1973) 9 Cal.3d 743, 749 [108 Cal.Rptr. 815, 511 P.2d 1167] [app. dism. 415 U.S. 903 (39 L.Ed.2d 460, 94 S.Ct. 1395)].) As noted in *Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 936 [92 Cal.Rptr. 278, 479 P.2d 638], our concern lies in protecting the public's right to representation by attorneys who are worthy of trust.

*Case of Lowenthal* (1882) 61 Cal. 122 does not aid Stratmore. *Lowenthal* stated, by way of dictum, that "The order of this Court admitting the defendant to practice is in the nature of a judgment that he possessed the requisite qualifications when the order was made and entered. [Citation.] It follows that the judgment, while it continues in force, is an adjudication determinative of the fact that defendant was of 'good moral character' when he was admitted by this Court, and an attack upon his previous character can not be made the basis of an order for his 'removal.' " (*Id.,* at p. 123.) It is evident from other language in the opinion, however, that the court did not there consider our inherent power over discipline.

We conclude that we have authority to discipline Stratmore for his pre-admission misconduct. We further conclude, after reviewing the entire record and considering all the facts and circumstances, that the recommendation of the board as to discipline should be adopted.

It is therefore ordered that Robert D. Stratmore be suspended from the practice of law for two years but that execution of the order be stayed and that he be placed on probation for that period upon the conditions prescribed by the board including actual suspension for the first nine months. It is also ordered that he comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days respectively after the effective date of this order. This order is effective 30 days after the filing of this opinion.