[No. D024789. Fourth Dist., Div. One. Dec. 16, 1996.]

M. J. LONGVAL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD., Respondent.

COUNSEL

M. J. Longval, in pro. per., for Petitioner.

Jose Angel Barajas as Amicus Curiae on behalf of Petitioner.

Thomas J. McBirnie for Respondent.

OPINION

HALLER, J.—In this workers' compensation proceeding, we granted the applicant representative's petition for a writ of review to decide whether 1991 amendments to Labor Code[1] sections 4903, subdivision (a),[2] and 5710,

---

[1]All statutory references are to the Labor Code unless otherwise specified.

[2]Section 4903 provides: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i) . . . [¶] (a) A reasonable attorney's fee for legal services pertaining to any claim for compensation either before the appeals board or before any of the appellate courts, and the reasonable disbursements in connection therewith. No fee for legal services shall be awarded to any representative who is not an attorney, except with respect to those claims for compensation for which an application, pursuant to Section 5501, has been filed with the appeals board on or before December 31, 1991, or for which a disclosure form,

subdivision (b)(4),[3] are unconstitutional for allowing fee awards only to licensed attorneys and disallowing fees to nonattorney representatives. We conclude the sections are rationally related to the state's purpose in eliminating fraudulent compensation claims. We also decide "licensed attorney" is limited to members of the State Bar of California. Accordingly we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

M. J. Longval (Longval) represents applicants for workers' compensation benefits before the Workers' Compensation Appeals Board (WCAB). Longval is not licensed to practice law in California but declares he is a member of the North Carolina State Bar and an inactive member of the bar in the Territory of Guam.

Beginning in 1993, Longval represented auto body repairman Luis Chavez, seeking benefits for a back injury (Chavez v. Workers' Comp. Appeals Bd., 1993, WCAB No. SDO 193104).[4] On July 17, 1995, the workers' compensation judge (WCJ) awarded Chavez benefits but denied Longval's request for $3,263.40 in attorney fees, citing sections 4903, subdivision (a) and 5710, subdivision (b)(4). Longval petitioned for reconsideration, claiming he was denied due process and equal protection and should be compensated because he is a licensed attorney, albeit elsewhere. The WCAB denied reconsideration on September 22, 1995, stating as an administrative agency it cannot declare unconstitutional a statute which it administers and further determined only attorneys licensed in California are entitled to fees for representing applicants.

On May 3, 1995, Longval petitioned the WCAB for $337.60 in fees for obtaining vocational rehabilitation benefits on behalf of sanitation worker

---

pursuant to Section 4906, has been sent to the employer, or insurer or third-party administrator, if either is known, on or before December 31, 1991. . . ."

[3]Section 5710, subdivision (b) provides: "Where the employer or insurance carrier requests a deposition to be taken of an injured employee, or any person claiming benefits as a dependent of an injured employee, the deponent is entitled to receive in addition to all other benefits:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(4) A reasonable allowance for attorney's fees for the deponent, if represented by an attorney licensed by the state bar of this state. The fee shall be discretionary with, and, if allowed, shall be set by, the appeals board, but shall be paid by the employer or his or her insurer."

[4]The certified record shows Chavez substituted Attorney John H. Keefe in place of Longval on September 21, 1993, and resubstituted Longval as his representative on April 5, 1995. From correspondence sent by Longval on Keefe's letterhead, it appears the two worked together. Longval's precise period of time representing Chavez is not material to the resolution here.

Arthur Amaral (Amaral v. Workers' Comp. Appeals Bd., 1995, WCAB No. SDO 200983). The WCJ denied the petition on July 7, 1995. Longval's petition for reconsideration was denied on September 20, 1995. He petitioned this court for review on November 6, 1995. We issued a writ of review on January 23, 1996.[5]

DISCUSSION

*Overview*

Since 1917, persons unlicensed to practice law have been permitted to represent workers before the WCAB.[6] Along with licensed attorneys, the lay representatives were entitled to receive compensation for their services, as fixed by the WCAB. In *Eagle Indem. Co.* v. *Industrial Acc. Com.* (1933) 217 Cal. 244 [18 P.2d 341], our Supreme Court explained the Legislature may prescribe the qualifications for admission to the bar and define what constitutes the practice of law. (*Id.* at p. 247.) Although as a general rule no one may practice law without a license, the Legislature may create exceptions to the rule. (*Ibid.*) The qualifications to practice and exceptions to licensure requirements are subject to judicial scrutiny for propriety and reasonableness. (*Ibid.*) The Supreme Court determined the Legislature had created such an exception for laypersons to practice law in representing workers before the WCAB, but noted "[i]f it be desirable from a legislative standpoint to prohibit lay representation before the [WCAB], the act could be amended to accomplish that result." (*Id.* at p. 249.)

In 1991 the Legislature amended the Labor Code, terminating the power of the WCAB to make awards of, and allow liens for, attorney fees to lay representatives but permitting lay representatives to continue representing workers. Section 4903, subdivision (a) now provides "[n]o fee for legal services shall be awarded to any representative who is not an attorney . . . ." Section 5710, subdivision (b)(4) allows an applicant deposed by the employer to receive "[a] reasonable allowance for attorney's fees . . . if represented by an attorney licensed by the state bar of this state." (Legis. Counsel's Dig., Assem. Bill No. 1673, 8 Stats. 1991 (Reg. Sess.) Summary Dig., p. 3700; Legis. Counsel's Dig., Sen. Bill No. 1218, 4 Stats. 1991 (Reg. Sess.) Summary Dig., p. 589, eff. Jan. 1, 1992.)

---

[5]Applicant representative Jose Angel Barajas's request to file an amicus curiae brief in support of Longval was granted on April 2, 1996. Barajas further alleged the amendments violate article I, sections 7 through 9 of the California Constitution and Labor Code section 50.5. We do not address these additional issues as amicus curiae may not raise new issues but must accept the case as it finds it. (*Bruno* v. *Superior Court* (1990) 219 Cal.App.3d 1359, 1365 [269 Cal.Rptr. 142].)

[6]Formerly the Industrial Accident Commission and Workmen's Compensation Appeals Board.

Prior to the effective date, a group of law school graduates not members of the State Bar challenged the validity of the amendments in the Superior Court of Sacramento County, seeking declaratory and injunctive relief. Ultimately our Supreme Court determined the superior court lacked subject matter jurisdiction and review must be either (1) by petition for writ of review after the WCAB failed to award fees for representation, or (2) by petition for writ of mandamus to a Court of Appeal. (*Greener* v. *Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1046 [25 Cal.Rptr.2d 539, 863 P.2d 784].) The court did not reach the validity of the amendments, which Longval now challenges after the WCAB denied his fee requests.

*Due Process*

 Longval argues representatives have been deprived of their "fundamental right to engage in their occupation."

 California workers' compensation law (§ 3200 et seq.) is a statutory system enacted under the constitutional grant of plenary power to the Legislature to establish a complete and exclusive system of workers' compensation. (Cal. Const., art. XIV, § 4[7]; § 3201.) It is an expression of police power; " '[b]y means of it, the legislature exercises a supervision over matters affecting the common weal and enforces the observance by each individual member of society of duties which he owes to others and the community at large. The possession and enjoyment of all rights are subject to this power. Under it, the state may "prescribe regulations promoting the health, peace, morals, education, and good order of the people, and legislate so as to increase the industries of the state, develop its resources and add to its welfare and prosperity." ' " (*Western Indemnity Co.* v. *Pillsbury* (1915) 170 Cal. 686, 694 [151 P. 398].)

 The right to receive workers' compensation benefits is "wholly statutory." (*Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 972

---

[7]Article XIV, section 4 provides in relevant part: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party. A complete system of workers' compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party; also full provision for securing safety in places of employment; full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury . . . full provision for otherwise securing the payment of compensation . . . ."

[88 Cal.Rptr. 202, 471 P.2d 1002].) The right to receive attorney fee awards for securing compensation on behalf of workers is also within the broad authority vested in the Legislature over the complete workers' compensation system by article IV, section 4 of the California Constitution.

■ "Generally, the constitutional guaranty of substantive due process protects against arbitrary legislative action; it requires legislation not to be 'unreasonable, arbitrary or capricious' but to have 'a real and substantial relation to the object sought to be attained.' . . ." (*Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300], citation omitted.) " 'A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' " (*Mathews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 739 [100 Cal.Rptr. 301, 493 P.2d 1165].) Courts must presume the legislative classification is valid unless it is manifestly without support in reason. (*Ibid.*)

■ Here, the amendments to sections 4903 and 5710 eliminating fee awards to lay representatives were part of comprehensive legislation aimed at reducing fraudulent workers' compensation claims.[8] Senate Bill No. 1218 (filed July 16, 1991) increased penalties for fraudulent claim activities,[9] including the possible loss of license for health care professionals[10] and suspension and disbarment for attorneys.[11] Conduct which previously was "unprofessional" became criminalized.[12] The bill refined the definition of "runner" and "capper" and broadened the prohibition against use of such persons by law firms.[13] It further required reporting of suspected fraudulent claims and provided funding for increased investigation and prosecution of workers' compensation fraud.[14] False, misleading or deceptive advertising by qualified medical evaluators was also criminalized.[15] (Legis. Counsel's Dig., Sen. Bill No. 1218, 4 Stats. 1991 (Reg. Sess.) Summary Dig., pp. 576-578.)

Before the amendments became effective, the Legislature further refined the antifraud legislation by Assembly Bill No. 1673 (filed Oct. 14, 1991),

---

[8]Senate Bill No. 1218 and Assembly Bill No. 1673 amended portions of the Business and Professions Code, the Insurance Code, the Labor Code and the Penal Code, as denoted in footnotes, *post.*

[9]Insurance Code section 1871.4.

[10]Business and Professions Code section 810, subdivision (b).

[11]Business and Professions Code section 6106.5.

[12]Business and Professions Code sections 2315, subdivision (b), 6151, subd. (a), 6153 and 6154.

[13]Business and Professions Code section 2314, subdivision (b).

[14]Insurance Code section 1872.83.

[15]Section 139.4.

specifying enhancements for prior violations relating to fraudulent claims and for acting as or employing "runners" and "cappers."[16] Noting the earlier amendment precluded the WCAB from awarding attorney fees "to any representative who is not an attorney," the Legislature created an exception "that a representative who is not an attorney may be awarded fees for legal services with respect to those claims for compensation" initiated before December 31, 1991.[17] (Legis. Counsel's Dig., Assem. Bill No. 1673, 8 Stats. 1991 (Reg. Sess.) Summary Dig., p. 3694.) Lay representatives filing applicant claims are now required to "notify the appeals board in writing that he or she is not an attorney licensed by the State Bar of this state."[18]

The Legislature specifically found "workers' compensation fraud harms employers by contributing to the increasingly high cost of workers' compensation insurance and self-insurance and harms employees by undermining the perceived legitimacy of all workers' compensation claims." (Ins. Code, § 1871, subd. (d).) The prevention of workers' compensation fraud "may reduce the number of workers' compensation claims and claim payments thereby producing a commensurate reduction in workers' compensation costs. Prevention of workers' compensation insurance fraud will assist in restoring confidence and faith in the workers' compensation system, and will facilitate expedient and full compensation for employees injured at the workplace." (Ins. Code, § 1871, subd. (e).)

At the time of the amendments, California's workers' compensation premium costs were among the nation's highest and the weekly benefits paid to injured workers were among the lowest. (Cal. Dept. Industrial Relations, Workers' Compensation Reform: Third Anniversary Update (1996) p. 4.) The clear aim of the legislation was to control fraudulent claim practices by increasing professional and criminal penalties and actively investigating and prosecuting fraud.

Longval argues physicians and attorneys, not representatives, were responsible for the fraudulent claims leading to the legislation. There is nothing in this record or in the legislative history to support that position. Longval further contends representatives presenting fraudulent claims can lose their ability to practice before the WCAB. Unlike attorneys and health care providers, the lay representatives have no standards for practice, no licensing requirements and no regulatory body to oversee their conduct. The

---

[16]Insurance Code section 750, subdivision (b).
[17]Section 4903, subdivision (a).
[18]Section 5501.

WCAB is not charged with disciplining representatives.[19] The Legislature rationally removed the financial incentive for lay representatives in its efforts to control fraudulent claims.

Longval and other lay representatives had no fundamental right to appear before the WCAB and receive compensation for their services. Even where the state licenses a person to conduct a business, trade or occupation, the person acquires a privilege, not a right, subject to the state's reasonable restrictions. (*Rosenblatt* v. *Cal. St. Bd. of Pharmacy* (1945) 69 Cal.App.2d 69, 74 [158 P.2d 199] [assistant pharmacist's license not renewed after classification abolished].) Rather than eliminate all lay assistance to applicants, the Legislature took the less drastic step of eliminating compensation and leaving applicants with pro bono assistance, along with attorney representation. Undeniably the class of persons earning a livelihood as lay representatives is affected by the legislation. However, the deprivation was not arbitrary but a valid exercise of police power to eliminate fraudulent claims for the public good.

*Equal Protection*

■ Longval also claims the amendments "den[y] applicants equal protection of the laws by treating those who chose [*sic*] non-attorney representatives differently than those who chose [*sic*] attorneys." He further argues applicants' due process rights are adversely affected because "their access to representation is limited by a lack of competent Workers' Compensation Attorneys." There is nothing in this record to support these assertions. Moreover, Longval does not have standing to challenge the statutes on behalf of applicants. "[O]ne will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305].) To the extent Longval's argument can be viewed that he has been denied due process because he is not

---

[19]A copy of a letter from the bill's author to the Governor urging his signature states: "The bill also permits workers' compensation hearing representatives, who are not State Bar attorneys, to continue to represent and receive compensation for those cases which they are currently handling or for cases they obtain prior to January 1, 1992. This provision was the result of a compromise between the applicant attorneys and the hearing representatives, with the understanding that this issue would receive further examination through an interim hearing held to discuss the possibility of providing educational standards, licensing, and professional rules of conduct for hearing representatives so that they may continue to practice in the workers' compensation system." (Letter from Sen. Robert Presley to Governor Wilson (Sept. 17, 1991) regarding Sen. Bill No. 1218 and Assem. Bill No. 1673 [available at Cal. State Archives].) There is nothing in the record to suggest further hearings were held.

compensated and others are, he is not similarly situated to persons licensed to practice law in California. (*Adams* v. *Commission on Judicial Performance* (1994) 8 Cal.4th 630, 659 [34 Cal.Rptr.2d 641, 882 P.2d 358].)

### *Licensure in California*

■ Longval next contends he should be paid for his services under section 4903 because he is licensed to practice law in North Carolina and Guam. He theorizes the Legislature intended to compensate all attorneys because it used general language in section 4903 but specified in section 5710 only attorneys "licensed by the state bar of this state" would be compensated for defending applicants' depositions.

We view the language in section 5710 as superfluous. The general rule is "[n]o person shall practice law in California unless the person is an active member of the State Bar." (Bus. & Prof. Code, § 6125.) Similarly no person may recover compensation for services as an attorney in California unless he or she was a member of the State Bar at the time the services were rendered. (*Hardy* v. *San Fernando Valley C. of C.* (1950) 99 Cal.App.2d 572, 576 [222 P.2d 314].) Membership allows the State Bar and Supreme Court to regulate and discipline attorneys and impose standards of conduct. (See *Howard* v. *Babcock* (1993) 6 Cal.4th 409, 418 [25 Cal.Rptr.2d 80, 863 P.2d 150, 28 A.L.R.5th 811].) In its efforts to eliminate fraudulent claims, the Legislature logically ended compensation for all persons not licensed to practice law in California because they were not subject to professional regulation.

### *Open and Public Hearings*

■ Finally, Longval asserts he and other representatives were denied due process because no public hearings were held about the amendments in violation of the open and public hearing requirements of Government Code section 9027 et seq.[20] and the open meeting requirements of Government Code section 54950 et seq. (The Ralph M. Brown Act.)

"The law-making power of the state is vested, by the constitution, in the legislature; and while the constitution has prescribed the formalities to be

---

[20]Longval erroneously cites Government Code section 9029. The open meeting provisions under the Government Code begin with section 9027, which provides: "Except as otherwise provided in this article, all meetings of a house of the Legislature or a committee thereof shall be open and public, and all persons shall be permitted to attend . . . ." Government Code section 9028 provides: "Any meeting that is required to be open and public pursuant to this article, including any closed session held pursuant to subdivision (a) of Section 9029, shall be held only after full and timely notice to the public as provided by the Joint Rules of the Assembly and Senate." Section 9029 provides when the Legislature or committee may hold a closed session.

observed in the passage of bills and the creation of statutes, the power to determine whether these formalities have been complied with is necessarily vested in the legislature itself . . . ." (*County of Yolo* v. *Colgan* (1901) 132 Cal. 265, 274-275 [64 P. 403].) This is the result of the constitutional separation of the legislative, executive and judicial functions. (*Ibid.*) An act of the Legislature, "as it is enrolled and authenticated on file in the office of the Secretary of State, cannot be impeached by showing defects and irregularities in the proceedings while pending before the Legislature." (*Sherman* v. *Story* (1866) 30 Cal. 253, 269.)

We note there is nothing in this record to support Longval's claim of irregular legislation. Moreover his reliance on the Ralph M. Brown Act is misplaced because the open and public meeting requirements of Government Code section 54950 apply to the legislative bodies of local agencies, not the Legislature. (Gov. Code, § 54951; *Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 823 [25 Cal.Rptr.2d 148, 863 P.2d 218].) Thus, we do not review Longval's claim the statutory amendments were improperly enacted.

### DISPOSITION

The decisions of the WCAB are affirmed.

Work, Acting P. J., and McDonald, J., concurred.

Petitioner's application for review by the Supreme Court was denied March 12, 1997.